IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WILLIAM T. SPENCER,

                     Plaintiff,                             Case No. 3:11-CV-06085-ST

        v.                                        OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,

                      Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, William T. Spencer ("Spencer"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-33. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

In September 2005, Spencer applied for DIB, alleging a disability onset date of September 1, 2003.  Tr. 199-203.[1]  After his application was denied both initially and on reconsideration, Spencer requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 85-86, 100-09.  On April 5, 2007, ALJ Marilyn Mauer held a hearing, at which Spencer was represented and testified.  Tr. 58-84.  On November 29, 2007, a supplemental hearing was held, at which Spencer again testified, as did vocational expert ("VE") Mark McGowan.  Tr. 45-57. On December 17, 2007, the ALJ issued a decision finding Spencer not disabled within the meaning of the Act.  Tr. 90-95.  On January 9, 2010, the Appeals Council granted Spencer's request for review and remanded the case to the ALJ for further administrative proceedings. Tr. 97-99.

Accordingly, the ALJ held a third hearing on August 31, 2010, at which Spencer and VE Nancy Bloom testified.  Tr. 21-39.  On November 24, 2010, the ALJ issued a decision finding Spencer not disabled.  Tr. 9-15.  On January 14, 2011, the Appeals Council denied Spencer's request for review, making ALJ Mauer's 20 decision the final decision of the Commissioner.  Tr. 1-3; 20 C.F.R. § 404.981.

## BACKGROUND

Spencer was born in October 1947.  Tr. 199.  He completed high school and one year of trade school.  Tr. 62, 227.  He has past relevant work as a mechanical design engineer and electromechanical drafter.  Tr. 30-32, 50-51.  Spencer alleges that he became unable to work on September 1, 2003, at age 55 due to impaired vision and residual right-sided weakness from polio.  Tr. 222, 239.

---

[1]  Citations are to the page(s) indicated in the official transcript of record filed on October 6, 2011 (docket #12).

## DISABILITY ANALYSIS

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines whether the claimant is performing substantial gainful activity. If so, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement.  20 C.F.R. § 404.1520(a)(4)(ii). Absent a severe impairment, the claimant is not disabled.  *Id.*  At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments.  20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine whether the claimant can perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot perform past relevant work then, at step five, the ALJ must determine if the claimant can perform other work in the national economy.  *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs

exist in the national economy within the claimant's RFC.  *Id.*  If the Commissioner meets this

burden, then the claimant is not disabled.  20 C.F.R. § 404.1566.

## ALJ'S FINDINGS

At step one, the ALJ found that Spencer has not engaged in any substantial gainful

activity since the alleged onset date of his disability, September 1, 2003.  Tr. 11.  At step two, the

ALJ determined that Spencer suffers from the following severe impairments: "myopia with

visual floaters; obesity; and right-sided leg weakness, status post polio."  *Id.*  At step three, the

ALJ found that Spencer's impairments, either singly or in combination, did not meet or equal the

requirements of a listed impairment.  Tr. 12.

Because Spencer did not establish disability at step three, the ALJ continued to evaluate

how his impairments affected his ability to work.  The ALJ resolved that Spencer had the RFC to

> perform a range of sedentary work . . . except due to chronic leg pain he
> can perform tasks that involve no more than 2 hours of standing/walking,
> and no more than 6 hours of sitting in an 8-hour workday.  He can
> occasionally lift/carry up to 20 pounds, and frequently lift/carry up to 10
> pounds.  He requires a cane to ambulate more than short distances, but can
> walk short distances without an assistive device.  Such tasks may involve
> occasional kneeling, crawling, crouching, and climbing of stairs and ramps
> – but must avoid climbing ladders, ropes and scaffolds.  Due to his visual
> impairments, he is unable to read fine print equivalent to a telephone
> directory white page listing on a consistent basis.  Nevertheless, he
> remains able to read print equivalent in size to newsprint or a textbook
> continuously.  He must avoid settings that require good peripheral vision
> awareness to avoid workplace hazards.

*Id.*

At step four, the ALJ found that Spencer was capable of performing his past relevant

work as a mechanical engineer and electromechanical drafter.  Tr. 14-15.  Accordingly, the ALJ

concluded that Spencer was not disabled at any time between September 1, 2003, and the date

last insured, December 31, 2008.  Tr. 15.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Lingenfelter*, 504 F.3d at 1035; *Batson*, 359 F.3d at 1193.

**DISCUSSION**

Spencer alleges that the ALJ erred by: (1) not following the Appeals Council's Remand Order; (2) failing to fully comply with SSR 03-1p at step three; (3) improperly rejecting his subjective symptom testimony; (4) inadequately assessing the lay testimony of his wife; and (5) omitting relevant impairments from the RFC assessment.

**I.    Appeals Council's Remand Order**

Spencer first asserts that the ALJ neglected to comply with the Appeals Council's Remand Order because she did not call a medical expert ("ME") at the 2010 hearing. As an initial matter, this court does not have jurisdiction over the Appeals Council's decisions. *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("[w]hen the Appeals Council denies a request for review, that denial is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner"). Accordingly, the

5 - OPINION AND ORDER

ALJ's 2010 decision is the only decision subject to judicial review. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also* 20 C.F.R. §§ 404.981, 422.210. The contents of the Remand Order are not properly before this Court.

Moreover, while not dispositive, the record reveals that the ALJ did, in fact, adequately comply with that Remand Order. The Appeals Council instructed the ALJ to "[o]btain additional evidence concerning the claimant's visual impairments in order to complete the administrative record" and "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's visual impairments, including abilities for near visual acuity." Tr. 98-99. Spencer acknowledges that the consultive examination performed by Philip Stockstad, O.D., on June 28, 2010 (Tr. 393-95), fulfills the former instruction. Further, at the hearing, Spencer's counsel agreed with the ALJ that the Remand Order did not "require an ME" and stipulated that submitting post-hearing questions regarding Spencer's near visual acuity to Dr. Stockstad would satisfy the Appeals Council's instructions. Tr. 36-38. Accordingly, in September 2010, after the last hearing, the ALJ provided written questions (presumably the ones submitted by Spencer's counsel, Tr. 37-38) to which Dr. Stockstad responded. Tr. 413-17.

Under these circumstances, Spencer's contention that the ALJ erred by failing to more fully develop the record by obtaining ME testimony is without merit.[2] Rather, as Spencer concedes, the record is complete. *See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (the ALJ's "duty to further develop the record is triggered only when there is ambiguous

---

[2]    Further, the court notes that, contrary to Spencer's assertion, there were no inconsistencies between the reports of Drs. Stockstad and Karren, such that ME testimony was necessary to resolve that ambiguity. *Compare* Tr. 415-17 (Dr. Stockstad's report, finding that Spencer's vision impairments did not meet the legal definition for disability and that he did not have any functional limitations arising from his floaters and myopia), *with* Tr. 340-46 (Dr. Karren's report, finding that Spencer's vision impairments did not meet the legal definition for disability and that his "visual function was adequate for most tasks," except for those requiring "ultra-fine visual acuity"; accordingly, the only limitation that the doctor assessed was in Spencer's ability "to read very small print"). This is especially true in light of the fact that the ALJ ultimately incorporated the more restrictive limitations assessed by Dr. Karren into Spencer's RFC. Tr. 12.

6 - OPINION AND ORDER

evidence or when the record is inadequate to allow for proper evaluation of the evidence"). Therefore, the ALJ's decision is affirmed as to this issue.

## II.    <u>Step Three Finding</u>

Next, Spencer argues that the ALJ failed at step three to analyze the record in accordance with SSR 03–1p.  Had the ALJ followed this regulation, Spencer asserts that he would have been found presumptively disabled under Listing 11.11.[3]  SSR 03-1p provides for the evaluation of claims involving "postpolio sequelae," which refers to multiple physical and mental disorders that may be manifested by polio survivors many years following acute polio infection.  *See* SSR 03-1p, 2003 WL 21638062 (July 2, 2003).  If the medical findings support a reasonable link between the prior polio infection and the present manifestation of any one or combination of specified disorders, the ALJ should find that the claimant has postpolio sequelae.  *Id.*

However, contrary to Spencer's assertion, a diagnosis of postpolio sequelae does not automatically fulfill Listing 11.11.  Instead, the claim is evaluated in the same manner as any other impairment: "the impact of any of the symptoms of postpolio sequelae, including fatigue, weakness, pain, intolerance to cold, etc., must be considered both in determining the severity of the impairment and in assessing the individual's RFC."  *Id.*  In other words, analysis under Listing 11.11 is only required where postpolio sequelae is "accompanied by appropriate symptoms, signs, and laboratory findings."  *Id.*

While the ALJ did not specifically mention this regulation or listing, she functionally complied with their requirements in evaluating the evidence.  The ALJ found that Spencer's "right-sided leg weakness, status post polio" was a severe impairment at step two.  Tr. 11.

---

[3]  While not explicit, Spencer also seemingly challenges the ALJ's finding that his visual impairments, in combination, were not equivalent to Listings 2.02, 2.03, or 2.04.  However, the ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  Here, Spencer failed to introduce any such evidence.  Accordingly, the ALJ did not err in this regard.

However, Spencer testified at the April 2007 hearing that he did not experience about 99% of the post polio syndrome symptoms[4] and that this impairment did not interfere with his ability to perform his past relevant work.  Tr. 78-79.  Further, he affirmatively denied having postpolio syndrome.   Tr. 222, 239.   As such, the ALJ reasonably did not consider whether Spencer's right-sided leg weakness met or equaled Listing 11.11 at step three.  Tr. 12; *see also* SSR 03-1p, 2003 WL 21638062 (July 2, 2003).

Nevertheless, the ALJ did consider the effects of Spencer's postpolio residuals, including atrophy and weakness in his right leg, when formulating the RFC.  Tr. 12-14.  Specifically, the ALJ considered Spencer's statements that "he is unable to stand for long periods, although he can walk long distances with an assistive device."  Tr. 13, 249, 315.  In addition, the ALJ reviewed the medical evidence of record, which indicated that Spencer's right-sided weakness was not presumptively disabling.  Tr. 14, 313-21; *see also* Tr. 332 (state agency non-examining physician, Linda L. Jensen, M.D., opined that the medical evidence in the record did not support the existence of an "11.00 listing level impairment"), Tr. 333 (affirmed by Mary Ann Westfall, M.D.).  For example, the ALJ noted that examining physician, Kurt Brewster, M.D.,[5] reported that Jensen "presented with a limp on the right side, but used no assistive device and sat for 20 minutes without position changes."  Tr. 14, 316.  The ALJ further remarked that "Dr. Brewster concluded that Mr. Spencer would likely be able to walk or stand for about 6 hours in an 8-hour workday with normal breaks," with "no limitations in [his] ability to sit."  Tr. 14, 319.  Nonetheless, viewing the evidence in the light most favorable, the ALJ restricted Spencer's RFC to sedentary level work, involving standing and walking no more than two hours, and sitting no more than six hours, in an eight-hour workday.

[4]   For the purposes of this appeal, postpolio syndrome is synonymous with postpolio sequelae.
[5]   Spencer did not seek medical treatment for this impairment and, as a result, the one-time examination performed by Dr. Brewster is the only evidence from an examining or treating source regarding his postpolio symptoms.

Spencer does not discuss the elements of Listing 11.11, or whether he meets them, or what further functional limitations were required to accommodate for this impairment. He merely relies on Dr. Brewster's findings for the proposition that he has postpolio syndrome. However, this evidence is insufficient to establish that Spencer's postpolio symptoms satisfy all of the specified criteria of Listing 11.11. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (claimant must manifest all of the specified criteria of a particular listing to qualify for disability under that listing); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.11. Because Spencer failed to establish that he was disabled due to limitations arising out of his childhood polio, any error at step three by not explicitly addressing SSR 03-1p or Listing 11.11 was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (errors that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011) (as amended) (claimant has the burden of establishing how the alleged error was harmful).

Therefore, the ALJ's step three finding is affirmed.

## III.    Spencer's Credibility

Spencer argues that the ALJ improperly evaluated his subjective symptom testimony regarding the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ "must state which [subjective symptom] testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In this case, the ALJ determined that Spencer's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms "are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." Tr. 13. Spencer argues that the ALJ may not use the RFC to discredit his testimony. However, "[t]here is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing explanation and then reaching a conclusion." *Bostic v. Astrue*, No. 3:10-cv-01153-HU, 2012 WL 786909, *1 (D.Or. Mar. 9, 2012) (quoting *Black v. Astrue,* No. 10-cv-06409-MO, 2011 WL 6130534, *6 (D.Or. Dec. 7, 2011)). In other words, the ALJ does not err simply by noting that a claimant's testimony was not credible to the extent it was inconsistent with the RFC where that conclusion is followed by sufficient reasoning.

After remarking that his statements were rejected to the extent they were inconsistent with the RFC, the ALJ went on to explain that Spencer's testimony was not credible because "his work cessation was motivated by a voluntary location from California to Oregon – and not due to his impairments." Tr. 14. To be sure, when a claimant's work history undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *See Bruton v. Massanari*, 268

F.3d 824, 828 (9th Cir. 2001) (noting a sufficient reason to disregard subjective pain testimony included stopping work due reasons other than the alleged disability).  The ALJ may not, however, mischaracterize evidence in order to discredit the claimant.  *See Reddick*, 157 F.3d at 722-23 (reversing the credibility determination where the ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record").

Such a mischaracterization occurred in this case.  At the April 2007 hearing, Spencer testified that his "inability to read is [the] biggest drawback for my profession" because "it's hard to concentrate when the floaters are a large distraction and sometimes I basically can't see with my left eye at all."  Tr. 69.  Further, Spencer stated that the floaters in both eyes periodically aligned, making his vision blurry.  Tr. 26-27, 75.  As a result, it "took [him] longer to do things that [he] did before."  Tr. 77.  Moreover, Spencer remarked that he could no longer use the computer, beyond checking his email once a day and playing solitaire, "because it's hard to read."  Tr. 73.  When asked later by his attorney to quantify the amount of time the floaters "cause a problem," Spencer responded that in "[m]y left eye, it's almost constant, and my right eye it [is] . . . a minimum of 25 percent."  Tr. 47-48.

In regard to his work history, Spencer testified that he "was laid off from a design job at SHB Instruments" in 2002 due to "cut backs."  Tr. 63-64, 66.  However, he clarified that:

> When I was laid off there, the reason I was able to work there is that they allowed me to hire an assistant . . .  I was able to actually dictate to him drawings . . . so I was able to do the work that way.  And I know that the boss did not like that; he thought it was redundant.  And I really believe that that's why [I was terminated].  He said he was cutting back and [then] when they let me go, they gave him – this is a good friend of mine that I had hired [to do the drafting for me], and they gave him a raise to what I was making so I just think they felt I was redundant.

Tr. 64-65.

In addition, Spencer testified that he started his own drafting business thereafter and had to close it by September 2003 despite having an assistant. Tr. 66-67. He also stated that he did not move to Oregon until April 2004. Tr. 68. Finally, Spencer explained that, due to the worsening of these visual conditions over time, he was no longer capable of engaging in his profession. Tr. 286.

This testimony reveals that Spencer's visual impairments prevented him from performing the requisite job functions of his past relevant work and, further, that he was likely terminated in 2002 due to his alleged disability. Accordingly, the sole reason proffered by the ALJ for finding Spencer not credible was not supported by substantial evidence.

The Commissioner argues that the ALJ properly discredited Spencer's testimony due to his inconsistent statements and activities of daily living, as well as the relatively benign medical findings. Contrary to the Commissioner's assertion, however, the ALJ did not raise these rationales in her decision. *See* Tr. 13-14. Because a court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision," this Court's review of Spencer's appeal is limited to the reason expressly articulated by the ALJ. *Stout*, 454 F.3d at 1054 (citation omitted). Further, this court cannot affirm the ALJ's decision wherein the only valid reason proffered for discrediting the claimant's subjective symptom testimony is the lack of corroborating medical findings. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *Smolen*, 80 F.3d at 1281.

Therefore, the ALJ's credibility finding is reversed.

## IV. __Lay Testimony__

Spencer also asserts that the ALJ failed to provide a legally sufficient reason to reject Mrs. Spencer's testimony. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account.

12 - OPINION AND ORDER

*Molina v. Astrue*, 674 F.3d 1104, 1114-15 (9th Cir. 2012).  The ALJ must provide reasons germane to each witness in order to discount competent lay testimony.  *Id.*; *Lewis*, 236 F.3d at 511.  However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1115; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); *Lewis*, 236 F.3d at 512.

Mrs. Spencer completed a Third-Party Adult Function Report relating to her husband's symptoms.  Tr. 252-59.  Regarding his daily activities, Mrs. Spencer stated that Spencer makes the bed without bending; takes a shower where "he has slipped and fallen several times;" gets dressed but it is "very difficult for him to put on his socks and shoes;" checks his email; "microwaves leftovers;" walks one block to the mailbox; and "unloads the dishwasher 3 or 4 times a week."  Tr. 252.  She further stated that Spencer does not drive anymore, despite holding a license, because "blurred vision and floaters present serious obstacles for safe driving."  Tr. 255.  As for hobbies, Spencer no longer builds model airplanes and can only read up to one hour per day, but "slower and with more difficulty since his eyes have worsened."  Tr. 256.

The ALJ gave "partial weight" to Mrs. Spencer's statements about visual difficulty driving because "[m]ore recent medical evidence . . . reveals that Mr. Spencer continued to meet the Oregon DMV requirements for legal vision to drive with corrective lenses."  Tr. 14. However, based on the record as a whole, the mere fact that Spencer did not meet the Oregon DMV's definition of blindness does not constitute a germane reason.  First, the fact that Spencer was not legally blind under the Oregon DMV's definition is immaterial, especially in light of the fact that Mrs. Spencer explained that Spencer no longer drives due to his visual impairments.

13 - OPINION AND ORDER

The ALJ already determined that objective medical evidence supported the existence of an impairment that could reasonably be expected to produce Spencer's visual symptoms. Tr. 13. Further, as discussed above, the ALJ improperly discredited Spencer subjective symptom testimony regarding the extent of these impairments, including his ability to drive.

The ALJ also rejected Mrs. Spencer's testimony because Spencer "remains physically able to make the bed, empty the dishwasher, water indoor plants, fertilize the lawn, start the lawnmower, and hose down the driveway," which the ALJ found "not consistent with an individual suffering from a debilitating physical impairment." Tr. 14. This reason is not supported by substantial evidence. It is well-established that the ability to "assist with some household chores [is] not determinative of disability." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). When viewed in its entirety, the record reveals that Spencer's activities of daily living were very limited by his right-sided weakness and impaired vision. More importantly, many of the daily activities that the ALJ cited as vitiating Mrs. Spencer's statements, such as emptying the dishwasher or turning on the lawnmower, are not inherently inconsistent with Spencer's allegation that he is unable to perform his past relevant work. Further, these activities do not necessarily indicate the ability to engage in sustained work activity.[6] *Id*.

Thus, ALJ erred in rejecting Mrs. Spencer's testimony.

## V.    RFC Assessment and Step Four Finding

Finally, Spencer argues that the ALJ failed to account for all of his impairments in the RFC assessment. As a result, Spencer asserts that the ALJ's step four finding was invalid. This court agrees.

---

[6]  For this reason, the ALJ also erred to the extent that she relied on Spencer's activities of daily living to discredit his subjective symptom testimony.

The RFC is the most a claimant can do despite his limitations.   20 C.F.R. § 404.1545(a)(1).  The ALJ must reach the RFC assessment based on all the relevant evidence in the record, including medical records and the effects of symptoms that are reasonably attributed to a medially determinable impairment.  *See Robbins*, 466 F.3d at 883; SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ's RFC must incorporate limitations found on the record.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

As discussed above, the ALJ did not provide legally sufficient reasons for discrediting Spencer's and his wife's statements.  Because the RFC does not account for the limitations set forth in this testimony, it is erroneous.  After finding the ALJ erred, this court has the discretion to remand for further proceedings or for the immediate payment of benefits.  *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The court should grant an immediate award of benefits when: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Id.* Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Because the ALJ failed to articulate legally valid reasons for rejecting the testimony of Spencer and his wife, this evidence is credited as true. *See, e.g.*, *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004). Once credited, however, there is no basis for the ALJ to conclude at step four that Spencer was not disabled. Rather, the testimony that was erroneously rejected indicates that Spencer's visual impairments precluded his past relevant work. *See, e.g.*, Tr. 26-27, 35-36, 47-48, 63-82, 252-59, 286. In addition, Spencer is now 65 years old and this case, which already involved three hearings and a remand from the Appeals Council, has been ongoing for seven years. Due to his age, if Spencer is unable to perform his past relevant work, he is disabled under the Medical Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.06; *see also* Tr. 54 (VE stating that Spencer has no transferrable work skills).

Under these circumstances, there is no utility in remanding this case for further proceedings. *See Harman*, 211 F.3d at 1180; *see also Benecke*, 379 F.3d at 595 ("[a]llowing the [ALJ] to decide the issue again would create an unfair 'heads we win; tails let's play again system of disability benefits adjudication"). Because no unresolved issues remain and it is clear from the record that the ALJ would be required to find him disabled once the improperly rejected evidence is credited, Spencer is entitled to an award of benefits.

## <u>ORDER</u>

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 USC § 405(g) for an immediate award of benefits.

DATED this  17th. day of December, 2012.

 s/  Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge